## CLAY et ux. v. MAXWELL.
### No. 10132.

Court of Civil Appeals of Texas. Galveston.
June 19, 1935.

Rehearing Denied July 18, 1935.

York & Neeld, of Houston, for plaintiffs in error.

A. T. Norman, of Houston, for defendant in error.

GRAVES, Justice.

The sole controversy in this cause was whether or not the partnership in the trucking business that existed between N. A. Clay and A. L. Maxwell up to the middle of January, 1932, had been extended or continued between them so as to make partnership business out of certain oil lease and royalty transactions conducted thereafter in the Conroe oil field in Montgomery county by N. A. Clay in his own name, with the consequent result of giving Maxwell an interest therein; the cause was heard on both the facts and the law by the court without a jury, which held in favor of Maxwell, rendering judgment accordingly, and supporting the same by these findings of fact and conclusions of law:

"Findings of Fact.

"1. A partnership contract was negotiated between A. L. Maxwell and N. A. Clay on or about March 20th, 1931. Such partnership continued without dissolution to and including the date plaintiff filed this suit to judgment without accounting.

"2. The partnership activities were later extended to include oil and mineral lease operations.

"3. A partnership accounting was had between A. L. Maxwell and N. A. Clay as to the trucking operations of said partnership after this suit was instituted and it was agreed N. A. Clay was indebted to A. L. Maxwell in the sum of Two Hundred Seventy Five and 29/100ths ($275.29) Dollars by virtue of the revenue derived from trucking operations.

"4. N. A. Clay negotiated and obtained on behalf of such partnership an interest in lease in the H. B. Littlefied, W. C. Railroad Survey No. 14 and T. & N. O. Survey No. 15, involving approximately Nine Hundred Twenty-two (922) acres of land in the Conroe oil field.

"5. July 9, 1932, N. A. Clay transferred and sold to Humble Oil & Refining Company such interest in the Conroe Oil Field property for a cash consideration of Eight Thousand One Hundred Sixty and no/100ths ($8,160.00) Dollars, reserving to himself an overriding royalty interest amounting to one-eighth (1/8) of one-thirty-second (1/32) of the interest sold to Humble Oil & Refining Company.

"6. A. L. Maxwell received no part of such lease assignment consideration. He is entitled to recover one-half of the Eight Thousand One Hundred Sixty and no/100ths ($8,160.00) Dollars, cash consideration and one-half the royalty interest reserved to N. A. Clay in said assignment dated July 9, 1932.

"7. July 14, 1932, N. A. Clay assigned the partnership interest in the over-riding royalty, reserved in the lease to Humble Oil & Refining Company, to Mrs. Malcolm B. Clay, his wife, for $10.00 and other considerations.

"8. July 14, 1932, and previous thereto, N. A. Clay was indebted to A. L. Maxwell.

"Conclusions of Law.

"1. Unverified denial of partnership relation must be considered as an admission of the material allegations in plaintiff's verified petition.

"2. Voluntary sale of interest in oil and gas lease dated July 14, 1932, by N. A. Clay to Mrs. Malcolm B. Clay was fraudulent and void as to A. L. Maxwell, but valid as to N. A. Clay.   Oct. 4, 1933.

"Roy F. Campbell."

No exception to or attack upon these findings was made, wherefore this court must regard as established the facts as therein stated; indeed, the only complaints of appellants in this court are:

(1) That the court erred in refusing to permit them on rebuttal to introduce testimony tending to show there was no such continued partnership, after having permitted the appellee to offer all the testimony he desired on that issue.

(2) That there was error in permitting the introduction in evidence of purported certified copies of the written contract, the affidavit, and two assignments received when they had not been given the statutory notice of the intended offering thereof 3 days prior to the trial, especially so in the absence of any showing that the originals of such instruments had been lost, were unprocurable, or had ever been in the possession of the appellants.

(3) That the purported copy of the written contract received was further inadmissible, in that it showed upon its face to have been certified, not by the county clerk of Montgomery county, but by an abstract company, instead.

(4) The court's refusal to permit appellants to withdraw their announcement of ready for trial solely for the purpose of amending their answer by having the same sworn to was prejudicial error, since such permission could neither have injured the appellee nor caused any surprise to him or delay of the trial, especially since the appellee failed to except to the unsworn character of such answer, thereby waiving any right to object to testimony denying the partnership.

(5) The admission of the purported certified copy of an assignment of the oil interest of N. A. Clay to his wife, Malcolm B. Clay, in the absence of the statutory requirement for the admission of a certified copy, was erroneous; hence there was no competent evidence to support the court's holding that this assignment was null and void as to the appellee.

In the state of the record, none of these presentments can be sustained; while, as stated, supra, appellant is in no position to question here the findings he failed below to except to (Continental Ins. Co. v. Milliken, 64 Tex. 46, 48), an examination anyway by this court of the statement of facts discloses that there was ample evidence to establish these controlling facts:

(1) That there was a joint interest in the Conroe leases between the parties here, as testified to by the witness, George Whaley, who detailed the admission of the appellant to him in transactions between them concerning the matter that Mr. Maxwell was jointly interested in these leases; further, the letter of the appellant himself to Maxwell was in evidence, in which he pointedly referred to this property as being their joint holding, thus directly referring to it as such: "Dancinger is drilling around 5,000 feet on the Carson. We have a law suit but it begins to appear as though our claim will be in a dry hole."

(2) That the appellant was permitted to and did directly testify to there having been no partnership relation between them when he was thus interrogated upon the matter by his counsel when on the stand and made this reply: "When you were in the trucking business, was the partnership to include anything else?  No."

(3) That, independent of the admission of the certified copies of the documents complained of, all these instruments were proved up by evidence aliunde, indeed, by the testimony of the appellant himself; that is, when on the stand he not only testified that each and all of these instruments had been executed and delivered, but went into the contents thereof, saying he had received the amount of money therefrom as found by the trial court, that he still had the remaining interest in the property, and that he had made the transfer to his wife, all in precise detail as stated in the quoted findings.

In these circumstances, it does not readily occur as to how the appellant could have been prejudicially injured by any of the matters of which he complains here. In addition to the fact that the amendment of pleadings in such instances as here appeared is a matter resting largely in the discretion of the trial court, it would appear that no amendment could have helped the appellant materially in this instance after the development of the facts referred to, and especially so since he made no showing whatever to the effect that, had the coveted amendment been accorded him, he could have presented or could have obtained any specific testimony from any source which would in any material way have aided him in his quoted denial of the partnership between him and the appellee in the Conroe transactions thus found to have existed.

Wherefore, upon the whole, the judgment of the trial court should be affirmed. It accordingly has been so ordered.

Affirmed.